UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

JULIAN CEPEDA, ALLEN FERREIRA, KASHIF MATTHEWS, JOSHUA MIRANDA, JONATHAN PEREZ; and ROBIN VALDEZ on their own behalf and on behalf of others similarly situated,

Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

Defendant.

-----------------------------------------------------------x

25-cv-5409 (PKC)

ORDER

CASTEL, Senior District Judge

The six named plaintiffs commenced an action against the City of New York ("the City") and six present or former senior employees of the City's Department of Correction ("DOC"). Plaintiffs seek damages for a DOC policy and practice of placing incarcerated persons in solitary confinement and segregated confinement facilities indefinitely and without due process of law. More specifically, plaintiffs principally challenge unlawful imposition of solitary confinement, improper medical isolation, inadequate out-of-cell time, failure to establish alternative housing units, and lack of opportunity to challenge an improper housing placement at a hearing. Plaintiffs' claims relate to two DOC facilities at Rikers Island, the Contagious Disease Unit at the West Facility and the second and third floors of North Infirmary Command ("NIC").

Presently before the Court is a letter motion to compel the City to produce communications between its employees and a monitor (the "Monitor") appointed by Chief Judge

Swain in Nunez v. City of New York, 11-cv-5845 (LTS) (S.D.N.Y.). (ECF 66.) Nunez challenged a pattern and practice of unnecessary and excessive use of force by DOC employees at all DOC jails, with limited exceptions. The Monitor was appointed to oversee the DOC's compliance with its obligations under a consent judgment (the "Consent Judgment").

Plaintiffs also seek production of diagrams, floor plans, and construction diagrams of certain "comparator" DOC protective custody facilities at Rikers Island that are not the subject of this action. (Id.) Plaintiffs seek this production to show that a different configuration could have been utilized at the locations at issue. (See id. at 5–6; ECF 69-3.)

For reasons that will be explained, the Court declines to compel the requested production.

## I. The Monitor

The First and Second Amended Complaints in Nunez alleged a pattern and practice of using unnecessary and excessive force against inmates in custody of the City at jails operated by DOC. (11-cv-5845, ECF 15 & 34.) Effective October 21, 2015, plaintiffs, the City, DOC, and the United States entered into the Consent Judgment that provides for the appointment of a Monitor who is "an agent of the Court," charged with the responsibility for assessing DOC's compliance with the Consent Judgment. (11-cv-5845, ECF 249 at Sec. XX, 1 & 30.) The Monitor is granted "the right to conduct confidential interviews of Inmates, [and] to speak to Staff Members outside the presence of other Staff Members, including Supervisors. . . ." (Id. at Sec. XX, 8.) The Monitor is prohibited from testifying in any litigation brought against DOC, "nor testify regarding any matter or subject that he may have learned of as a result of his performance" as Monitor. (Id. at Sec. XX, 28.)

DOC is required to submit periodic compliance reports to the Monitor and to plaintiffs' counsel in Nunez; in submitting such reports, DOC may redact staff member names. (Id. at Sec. XIX, 1 & 2.) The Consent Judgment recites that "Compliance Reports shall not be admissible against Defendants in any proceeding other than a proceeding related to the enforcement of this Agreement." (Id. at Sec. XIX, 3.) The information required to be reported is sweeping. It includes the number of inmate-on-inmate assaults involving young inmates, the number of staff injuries resulting from use-of-force incidents, the number of cell extractions, all uses of force in which a violation was found, and the corrective, remedial, disciplinary, or other actions taken against the use-of-force violator. (Id. at Sec. XIX, 4(b) & (c).) DOC must provide the Monitor with all records required by or developed pursuant to the Consent Judgment within 14 days of a request. (Id. at Sec. XIX, 7.)

For each Reporting Period, the Monitor files a report describing DOC's efforts to implement and compliance with the Consent Judgment. (Id. at Sec. XX, 16.) These reports are posted on the Nunez docket. (See, e.g., 11-cv-5845, ECF 975.)

As part of the Consent Judgment, the Monitor is required to enter into a confidentiality agreement, (11-cv-5845, ECF 249 at Sec. XX, 7), which they subsequently did. (11-cv-5845, ECF 792-2.) The Consent Judgment also provides that the amended Protective Order entered in Nunez on May 23, 2013, (11-cv-5845, ECF 89), "remains in full force and effect." (11-cv-5845, ECF 249 at Sec. XX, 11(d).) [1] Even so, the United States Attorney's Office for this District and Department of Justice "may use any materials designated as confidential pursuant to the Protective Order as is necessary to enforce [the Consent Judgement] or for any law enforcement purpose." (Id.)

[1] The Protective Order was further amended by Order on March 30, 2017. (11-cv-5845, ECF 293.)

A. Plaintiffs' Requests and Defendants' Response

Plaintiffs request all communications and all documents relating to communications by City officials and the Monitor regarding the confinement of individuals or the due process provided to individuals confined in two identified locations: the Contagious Disease Unit at the West Facility and the second and third floors of NIC. (ECF 66 at 2.) Plaintiffs also seek all documents concerning the City's response to certain Monitor recommendations. (Id. at 3.)

Defendants have objected to the document requests, arguing, among other reasons, that the requested documents are not relevant to the claims in this action, not proportional to the needs of the case, and "implicate," various privileges, including the attorney work product, law enforcement privileges and are protected by HIPAA and doctor- and therapist-patient privileges. (See ECF 66 at 10; ECF 66–1; ECF 66–2.) Defendants also object because "[t]he production of any discovery regarding communications with the [Nunez] Monitoring Team would interfere with the goals of the Court's orders in Nunez, which are intended solely to facilitate compliance with the Court's orders in that case." (ECF 66-1 at 1.) Subsequent submissions have expanded the basis of defendants' objections, including the deliberative process privilege. (ECF 69.)

Defendants have submitted the Declaration of Kimberly Joyce, DOC's Executive Agency Counsel and Nunez Manager, who states that the granting plaintiffs' request "would negatively impact the efficacy of the Nunez Monitor in overseeing compliance [] and would nullify the intent of the Consent Judgment." (Joyce Dec. ¶8, ECF 69-1.) She explains:

> The Department is required to proactively consult with the Monitor in advance of promulgating any new policies or procedures that relate to compliance with the

> *Nunez* Court Orders. . . . And in certain cases, the Department must seek approval from the Monitor, including, for example, opening certain housing units. . . . The continued confidentiality of these communications is necessary to ensure transparency and the free flow of information and ideas with the Monitor necessary for Defendants to achieve compliance with the goals of *Nunez*.

(Id. at ¶7.)

B. Proper Scope of Discovery

Rule 26(b)(1) permits a party to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense "and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

While the issues in the present action are important, the discovery sought, at most, has low "importance. . . in resolving the issues." Plaintiffs are free to pursue discovery of incidents or circumstances that assert their claims or rebut a defense asserted by defendants. They thus have other access to information relevant to the claims and defenses in this action. Information and expressions of opinion — including proposals or objections to proposals for changes in operations — conveyed to the Nunez Monitor as part of an interactive process of achieving compliance with the Nunez Consent Judgment have not been shown to have a high level of importance to this action.

Furthermore, plaintiffs claim no right or standing to enforce any provision of the Consent Judgment in Nunez. They make no claim that false or misleading information has been provided to the Monitor.

The burden of compliance with the requested information is considerable. Because of the nature of the obligations under the Consent Judgment, the DOC learning of all communications between its employees — including senior staff — and the Monitor would intrude upon the Consent Judgment's protections. (See ECF 69-1 at ¶¶7–8). As noted, the Monitor has the right to speak to DOC staff members outside the presence of their supervisors. (11-cv-5845, ECF 249 at Sec. XX, 8.) That right is undermined if the DOC must uncover who has communicated with the Monitor and on what subjects.

DOC makes a credible claim that disclosure of its communications with the Monitor would undermine the free flow of information intended to bring DOC into full compliance with its obligations in Nunez. This is a burden of substance, not of time or expense, that also militates against disclosure.

The Court denies plaintiffs' motion to compel compliance with Document Requests 31 through 33 as beyond the scope of Rule 26(b)(1), taking account of the low importance of the discovery to this action, access to other relevant information, and the burden to the defendants. It is not necessary for the Court to reach defendants' claim of privilege.

## II. Diagrams and Floor Plans of Certain Facilities

Plaintiffs also seek production of "[d]iagrams (to scale), floor plans, construction drawings, and/or other documents sufficient to depict the layout and dimensions of the cells and common areas in the protective custody facilities" of three facilities not at issue in this litigation: "(a) Robert N. Davoren Complex (4th floor, Lower North and South, Central South and North, Upper South, and North, Mod 4 Lower North); (b) Otis Bantum Correctional ("OBCC") (5 Southwest); and (c) Rose M. Singer Center. . . ." (ECF 66 at 4.) Plaintiffs assert that they toured

two of these DOC protective custody facilities and found that the facilities "were much less restrictive and offered a much more appropriate environment." (Id. at 6.)

Defendants have agreed to produce stock photographs of other facilities but refuse to produce diagrams, floor plans, or construction drawings. (ECF 69 at 7–8.) Defendants have produced such materials for the facilities at issue, but they object to doing so as to other facilities. Defendants argue these materials are not relevant and may contain sensitive technical information about active facilities. (Id. at 8); see also Diaz v. Goord, 04-cv-6094 CJS, 2010 WL 2671770, at *1 (W.D.N.Y. July 1, 2010) (finding that because "defendants' legitimate security needs outweigh plaintiff's need for an official to-scale diagram" of a prison yard, request to compel production would be denied).

The Court denies the request because the actual diagrams, floor plans, and construction drawings of other facilities not encompassed within the Complaint have low importance to the issue of whether the conditions of confinement at DOC's Contagious Disease Unit at the West Facility and the second and third floors of NIC were unlawful. Additionally, the stated need for the actual diagrams, floor plans, and construction drawings do not outweigh the legitimate concerns for the security of a jail facility.

CONCLUSION

Considering the request in the context of the entirety of Rule 26(b)(1), the Letter Motion to Compel at ECF 66 is DENIED and should be terminated.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 17, 2026